UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------

LOCAL 2110, TECHNICAL, OFFICE AND
PROFESSIONAL UNION, UAW, AFL-CIO,

     Petitioner,

   -against-

TEACHERS COLLEGE, COLUMBIA
UNIVERSITY

     Respondent.

------------------------------------------------

17cv3095

MEMORANDUM & ORDER

WILLIAM H. PAULEY III, Senior United States District Judge:

  Local 2110, Technical, Office and Professional Union, UAW, AFL-CIO ("the Union") petitions this Court for confirmation of an arbitration award (the "Award") against Teachers College, Columbia University (the "College"). For the reasons that follow, the Union's petition is denied.

## BACKGROUND

  The Union, which consists of various clerical and administrative employees, and the College are parties to a collective bargaining agreement ("CBA"). (Respondent's Counter-Statement of Facts Pursuant to Local Rule 56.1, ECF No. 37 ("56.1"), ¶ 1.) Article XII of the CBA states:

> Each employee shall receive compensatory time off at the rate of time and one half for all time actually worked after thirty-five and through the fortieth working hours per week. For all time worked in excess of forty hours per week each employee shall be paid at the rate of time and one half.

(56.1 ¶ 2.) "For purposes of computing overtime pay, the following absences for which compensation is paid shall be deemed time worked: Jury Duty, Sick Leave, Holidays and Vacation Time, and Compensatory Time Off." (56.1 ¶ 2.) Moreover, Articles XIV and XXXIII

of the CBA explain that employees shall receive certain paid holidays, including personal holidays and "summer Fridays," in which employees may leave early on Fridays during the summertime. (56.1 ¶ 3.) The CBA also contemplates that "the regular work week for each full-time employee shall consist of seven (7) working hours per day for five (5) consecutive days. The work [w]eek begins on a Monday and ends on a Sunday." (56.1 ¶ 4.)

For years, the College granted time-and-one-half compensatory time for hours worked over 35 in a week even when employees took paid time off ("PTO"). (56.1 ¶ 11.) In other words, employees could use PTO hours to reach the 35-hour threshold that triggered the time-and-one-half compensatory overtime rate. For instance, if an employee actually worked 30 hours during the week but took a full day of PTO, he would receive compensatory time for 2 hours at time and one half, even though he did not actually work more than 35 hours. However, in 2015, the College stopped allowing employees to use PTO to reach the 35-hour threshold. Thus, in the example discussed above, that employee would no longer receive compensatory time at the time-and-one-half rate because he did not actually work more than 35 hours.

The Union grieved this change in practice and the parties went to arbitration. Hearings were held on December 15, 2015 and April 20, 2016, and the parties submitted post-hearing briefs through June 6, 2016. (Decl. of Dana E. Lossia, ECF No. 34, Ex. 1 (the "Award") at 1.) The arbitrator determined that he should resolve the following question: "Whether [the College] violated the collective bargaining agreement by refusing to deem certain paid absences, including [Jury Duty, Sick Leave, Holidays and Vacation Time, and Compensatory Time Off], as time worked for the purposes of computation of compensatory time after the 35th and 40th working hour in a week?" (Award at 2.) Put another way, "[t]he issue in this dispute is whether the College violates the Agreement by not deeming paid absences during the first 35 hours of the

2

work week as time worked for purposes of receiving overtime compensation after the 35th and through the 40th working hours of the week." (Award at 20.)

In his analysis, the arbitrator found the following CBA clause to be ambiguous: "Each employee shall receive compensatory time off at the rate of time and one half for all time actually worked after thirty-five and through the fortieth working hours per week." (Award at 22.) Accordingly, the arbitrator weighed extrinsic evidence to find that "there has been a longstanding, consistent practice of deeming paid time off to be time worked for purposes of calculating the 35-hour threshold necessary to receive time and one-half for hours worked over 35 and through 40 hours in a work week." (Award at 23.) "Thus, hours recorded as 'Jury Duty, Sick Leave, Holidays and Vacation Time, and Compensatory Time Off,' during the first 35 hours of the work week, have been counted towards the threshold required to receive compensatory time off or pay at a rate of time and one half after the 35th and through the 40th hours in a work week." (Award at 23.) Specifically, he found that the College "was unable to provide examples in which a Union member did not receive compensation at time and one half for hours over 35 and through 40 in a week in which that employee used paid time off to reach the 35[-]hour threshold." (Award at 24.) The arbitrator did not explain what he meant by "the first 35 hours of the work week."

Moreover, the arbitrator found "that the parties had a past practice of deeming personal holidays and summer Fridays as time worked for purposes of calculating the 35-hour overtime threshold." (Award at 25.) And the College "placed no limitation on the makeup of the 35 hours deemed time worked in a work week to reach the overtime threshold." (Award at 25.) In other words, personal holidays and summer Fridays were treated no differently than

3

other types of PTO. (Award at 25.) Further, the arbitrator recognized that the College "accepted paid time off in lieu of 'hours actually worked.'" (Award at 25.)

Accordingly, the arbitrator held that the College violated the CBA "by refusing to deem the absences set forth in Article XII, Section 2, as well as personal holidays and summer Friday release time, as time worked for purposes of computation of compensatory time after the 35th and up to the 40th working hour in a week." (Award at 27.) As a remedy, the arbitrator ordered the College to "revert to the longstanding practice described in the Opinion accompanying this Award regarding the application of compensatory time and make whole any Union members who were denied overtime earnings as a result of the referenced violation." (Award at 27.)

Thereafter, the College began excluding certain hours from the compensatory overtime calculation, based on the Award's directive to revert to the "longstanding, consistent practice of deeming paid time off . . . <u>during the first 35 hours of the work week</u> [to] have been counted towards the threshold required to receive compensatory time off or pay at a rate of time and one half after the 35th and through the 40th hours in a work week." (Award at 23 (emphasis added).) Specifically, the College no longer allows employees to use PTO (or personal days or summer Fridays) to reach the 35-hour threshold if that time is not used during the first 35 hours actually logged during the work week. For instance, if an employee worked 30 hours from Monday through Thursday, then left two hours early for summer Friday (only working five hours on Friday), that employee would receive no compensatory time at the overtime rate, because he did not actually work more than 35 hours. Thus, to receive the overtime rate for a summer Friday where an employee did not work 35 or more hours <u>before</u> a summer Friday, the employee would have to work over the weekend.

4

The Union objected to this new method, arguing that the College was not in compliance with the Award. In particular, the Union noted that because employees rarely, if ever, worked weekends, the "first 35 hours of the work week" could only refer to the typical 9 a.m. – 5 p.m., Monday through Friday work week. The College countered that the CBA states that a work week starts on Monday and ends on Sunday. In August 2016, the College sought clarification from the arbitrator, who responded that he was functus officio and had no authority to provide any guidance.

On April 27, 2017, the Union petitioned this Court to confirm the Award. On November 28, 2017, this Court denied the Union's petition without prejudice. Specifically, this Court found that the dispute was not about whether the Award should be confirmed, but whether the College had complied with it. (Mem. & Order dated Nov. 28, 2017, ECF No. 21 ("Nov. 2017 Order") at 2-3.) Accordingly, this Court ordered the Union to submit a more fulsome factual record in compliance with Local Rule 56.1. (Nov. 2017 Order at 4.)

Thereafter, the College moved for reconsideration, arguing that this Court improperly ordered the parties to submit extrinsic evidence and should weigh only the plain language of the Award. By Memorandum & Order dated July 17, 2018, this Court granted in part and denied in part the College's motion to reconsider. Specifically, this Court agreed "that considering extrinsic evidence beyond the plain language of the Arbitration Award would be improper in the context of reviewing a motion to confirm an arbitral award." (Mem. & Order dated July 17, 2018, ECF No. 28, ("July 2018 Order"), at 3.) Thus, this Court granted the motion with respect to its direction for the parties to submit extrinsic evidence. However, it directed the Union to submit a motion compliant with Local Rule 56.1, at which point this Court would "undertake its limited review in accord with its 'task [to] simply ensure that the arbitrator

5

was even arguably construing or applying the contract and acting within the scope of his authority and did not ignore the plain language of the contract.'" (July 2018 Order at 4 (alteration in original) (quoting Nat'l Football League Mgmt. Council v. Nat'l Football League Players Ass'n, 820 F.3d 527, 537 (2d Cir. 2016)).)

Now, the Union renews its petition to confirm the Award. This time, the Union appended a statement of undisputed facts pursuant to Local Rule 56.1 to its motion, as well as a declaration with exhibits. But once again, the parties fail to address the merits of whether the Award should be confirmed. Rather, they disagree over the College's compliance with the Award.

## DISCUSSION

A petition to confirm an arbitration award is "treated as akin to a motion for summary judgment based on the movant's submissions." D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 110 (2d Cir. 2006). Thus, the moving party bears the burden of asserting facts showing that the non-movant's position cannot be sustained and that there is no genuine issue of material fact.

Confirmation of an arbitration award is generally "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court." D.H. Blair, 462 F.3d at 110. A confirmation motion "is not intended to involve complex factual determinations, other than the determination of the limited statutory conditions for confirmation or grounds for refusal to confirm." Nat'l Cas. Co. v. Resolute Reinsurance Co., 2016 WL 1178779, at *2 (S.D.N.Y. Mar. 24, 2016).

Indeed, courts "use[] an extremely deferential standard of review for arbitral awards." Porzig v. Dresdner, Kleinwort, Benson, North Am. LLC, 497 F.3d 133, 138 (2d Cir.

6

2007). Thus, "[i]f the arbitrator has provided even a barely colorable justification for his or her interpretation of the contract, the award must stand." Westerbeke Corp. v. Daihatsu Motor Co., 304 F.3d 200, 222 (2d Cir. 2002). Ultimately, "in a confirmation proceeding, the court properly may consider only the statutory bases for modifying or vacating an award and challenges to the award's clarity." Ottley v. Schwartzberg, 819 F.2d 373, 377 (2d Cir. 1987); Zephyros Maritime Agencies, Inc. v. Mexicana de Cobre, S.A., 662 F. Supp. 892, 895 (S.D.N.Y. 1987) (explaining that a "court must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected"). "When the award is clear and unambiguous it must be upheld." Zephyros, 662 F. Supp. at 895.

"At the confirmation stage, the court is not required to consider the subsequent question of compliance." Zeiler, 500 F.3d at 169; Dist. Council No. 9 v. APC Painting, Inc., 272 F. Supp. 2d 229, 239 (S.D.N.Y. 2003) ("But whether these awards have been satisfied—a fact disputed by plaintiff—has no bearing on whether the arbitration awards should be confirmed."); Am. Nursing Home v. Local 144, 1992 WL 47553, at *2 (S.D.N.Y. Mar. 4, 1992) ("The issues of compliance and confirmation are distinct from each other. A court may confirm an arbitration award even in the absence of a showing of non-compliance.").

Here, the parties do not discuss whether "the very narrow set of circumstances delineated by statute and case law" apply to vacate the award. Wallace v. Buttar, 378 F.3d 182, 189 (2d Cir. 2004) (the four statutory grounds enumerated in the Federal Arbitration Act or that the award exhibits a manifest disregard of the law); 9 U.S.C. § 10(a) (setting forth four grounds under which an award may be vacated, none of which apply here). Indeed, nothing in the record or the parties' briefs suggests that the Award should not be confirmed. Instead, the thrust of the briefing on this motion is directed at how the Award should be interpreted.

7

"Where the parties dispute the meaning of an award the Court's role is to examine the award and determine whether remanding it to the [arbitrator] is necessary to clarify precisely what the Court is being asked to enforce." Zephyros, 662 F. Supp. at 895 (quotation marks omitted); see Hyle v. Doctor's Assocs., Inc., 198 F.3d 368, 372 (2d Cir. 1999) (affirming district court's denial of motion for confirmation and order remanding to the arbitrator). Specifically, "a court should not attempt to enforce an award that is ambiguous or indefinite." Americas Ins. Co. v. Seagull Compania Naviera, S.A., 774 F.2d 64, 67 (2d Cir. 1985); Ottley, 819 F.2d at 376 (holding that a remand to the arbitrator is "appropriate in only certain limited circumstances such as when an award is incomplete or ambiguous" (quotation marks omitted)); see Daum Glob. Holdings Corp. v. Ybrant Dig. Ltd., 2015 WL 5853783, at *2 (S.D.N.Y. Oct. 6, 2015) (explaining that "[o]nly when an award is internally contradictory or so ambiguous that neither party can 'advance[] a clear and compelling interpretation of the award' must a proceeding to enforce an arbitration award be remanded back to arbitration" (alteration in original) (quoting Kallen v. Dist. 1199, Nat'l Union of Hosp. & Health Care Emp., 574 F.2d 723, 726 (2d Cir. 1978))).

Although there is no dispute about whether the Award should be confirmed, it would be a fool's errand to confirm an award that is ambiguous. Here, the parties disagree over its import and meaning. It is unclear which party's interpretation of the Award is correct because nothing in the Award defines whether the "first 35 hours" of a work week are the first 35 hours actually worked or merely the standard Monday through Friday schedule. And the CBA provides no further clarity. Although it contemplates that "the regular work week for each full-time employee shall consist of seven (7) working hours per day for five (5) consecutive days," it also explains that "the work [w]eek begins on a Monday and ends on a Sunday." (56.1 ¶ 4.)

Accordingly, the Union's motion is denied, and this Court remands the matter to the arbitrator for clarification. See Hyle, 198 F.3d at 369, 372 (affirming remand to arbitrator due to ambiguity even after arbitrator was functus officio). However, "the arbitrator is limited in his review to the specific matter remanded for clarification and may not rehear or redetermine those matters not in question." LLT Int'l, Inc. v. MCI Telecommunications Corp., 69 F. Supp. 2d 510, 515 (S.D.N.Y. 1999) (quotation marks omitted).

## CONCLUSION

For the foregoing reasons, the Union's motion to confirm is denied. This matter is remanded to the arbitrator, who shall clarify the ambiguities in the Award discussed in this Memorandum & Order. The Clerk of Court is directed to terminate the motion pending at ECF No. 31 and to mark this case as closed.

Dated: February 19, 2019
       New York, New York

SO ORDERED:

WILLIAM H. PAULEY III
U.S.D.J.